UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ERIC MASTERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )    09-cv-3328 |
| JOHN KIRBY, VINCE FOX, | ) |
| CANDACE CAIN,[1] ARRON | ) |
| JOHNSTON,[2] | ) |
| | ) |
| Defendants. | ) |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding *pro se*, is a pretrial detainee at the Sangamon County Jail. He pursues a failure-to-protect claim arising from an assault against him by two other inmates at the Jail. Now before this Court is Defendants' motion for summary judgment. For the reasons below, the motion will be granted as to Defendants Johnston and Bouvet, and denied as to the remaining Defendants. The case will be set for trial, but the remaining Defendants will be given an opportunity

---

[1]The Court adopts Ms. Cain's own spelling of her first name.

[2]The parties appear to agree that Arron Johnston is the correct spelling of this defendant's name. Plaintiff confirms that Arron Johnston is the correct defendant, not Anthony Johnson, another employee of Sangamon County Jail. (d/e 64, p. 2).

1

to file a supplemental summary judgment motion.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the

nonmovant.  Id.

## UNDISPUTED FACTS

On or about February 20, 2009, Plaintiff was arrested on charges of predatory criminal sexual assault and detained in the Sangamon County Jail.  He remains there, with his trial currently scheduled for December 5, 2011, according to the docket sheet on the Sangamon County Circuit Clerk's website.

Plaintiff was initially placed in the D block of the Jail.  In November, 2009, he was threatened by five other inmates on D block:  Mujahid Mateen, Rodney Johnson, Keith Smith, Matthew Edwards, and Jamil Hamilton.  These five threatened to "jump" Plaintiff if he did not move off block D.  (Plaintiff's Dep., p. 14, d/e 59-1).  Plaintiff believes that their animosity stemmed from somehow discovering the nature of the criminal charges lodged against Plaintiff.  Plaintiff tried to get word to his girlfriend about the threats so that she would call the Jail.

On November 18, 2009, Plaintiff was called out of D Block into the hall to discuss his fears with Defendant Officer Candace Cain.  Plaintiff told Cain about the threats, specifically naming the individuals who were threatening him.  That day he chose to go to segregation so that he could be "reclassified" and placed in a different cell block.  Plaintiff believes that an Officer Ball, who is not a defendant, initiated the paperwork to make that change, but there is no paperwork in the

record, nor any affidavit from Ball.  Nor does Cain offer an affidavit.

Plaintiff contends that Defendants Kirby and Fox are responsible for reclassifying detainees.  According to Plaintiff, Kirby came by Plaintiff's segregation cell on November 19, 2009, and Plaintiff told Kirby about the threats, specifically identifying the name of each of the five inmates.  Neither Defendant Kirby nor Fix provides an affidavit.   According to Plaintiff, on or about November 23rd, as a back-up to ensure his protection, he listed his five enemies on an inmate request form and placed the form in his door for pick up.  Plaintiff testified that he saw Defendant Johnston walk by on his check of the cells, retrieve the form, look at it, and walk off with it. (Plaintiff's Dep., p. 45, d/e 59-1). Johnston avers that he has no recollection of this, but he also avers that, if he had been handed such a request, he would have forwarded the request to his supervisor. (Johnston Aff. ¶¶ 3-4, d/e 59-2).  About three days later, Plaintiff was moved to a single cell in E block, which is next to D block.  Plaintiff has no copy of the inmate request form he placed in his door, and Defendants do not address whether they have the request in their records.

Plaintiff further testified that inmate Rodney Johnson continued to threaten him from D block, warning that "when we go to medical together, you know what I am saying, when we go to medical, we are beating your ass." (Plaintiff's Dep., p.

4

39, d/e 59-1). About once a month, inmates are taken to the medical unit for blood pressure checks.

The day before the scheduled blood pressure check, Plaintiff sent an inmate request form addressed to Defendant Kirby, stating that he did not want to be near his enemies during the medical call. (Plaintiff's Dep., p. 39-40, d/e 59-1). However, for reasons not in the record, this request was taken to Nurse West, not to Defendant Kirby. Id. Plaintiff believes that Nurse West forwarded the request to Defendant Cain. Cain does not address whether she received this request.

On December 8, 2009, Plaintiff was escorted with five other inmates to medical call. Unfortunately, three of those other inmates were his declared enemies: Mujahid Mateen, Keith Smith, and Rodney Johnson. When Plaintiff saw his enemies in the sally port, Plaintiff told Officer Underwood, who was working in the "bubble," that he did not want to go, but he did not explain why. According to Plaintiff, Officer Underwood told Plaintiff he had to go to medical. Officer Bloom escorted Plaintiff and the other inmates from the sally port into a holding cell, which functioned as a waiting room for the nurse's station. The holding cell has a tinted window and is around the corner from the nurse's station. Officer Bloom locked Plaintiff and four of the other inmates, including Plaintiff's three enemies, in the holding cell, unsupervised. Bloom then escorted the other inmate

around the corner to the nurse's station.  Plaintiff did not try to stop Officer Bloom and did not inform Bloom that these inmates were his declared enemies or had threatened him.  There is no evidence that Bloom actually knew about Plaintiff's declared enemies.  Plaintiff assumed everyone knew about his enemies because of his prior discussions with Cain and Kirby, his move to block E, and the enemy list he had submitted.

      Trouble began soon after Officer Bloom left.  According to Plaintiff, Mujahid Mateen "jumped up and bust on me, and Rodney Johnson jumped off the wall, and started kicking me in my head and my chest." (Plaintiff's Dep., p. 21, d/e 59-1).  Plaintiff was punched and kicked repeatedly about his head and face. Plaintiff testified that the attack lasted five to ten minutes until his was able to get the officers' attention by banging on the door.  Officer Bloom opened the door and retrieved Plaintiff, and several other officers came for back-up.  Plaintiff suffered bruising, swelling, bleeding, and cuts, but no permanent injuries.     After this incident, Plaintiff was moved from the north end to the south end of the Jail. Plaintiff apparently had no further problems until May 24, 2010, when he was placed in a holding cell, unsupervised, with Mujahid Mateen and other inmates waiting to be transported to court.  Mateen did not attack Plaintiff on this date, but Plaintiff became concerned and filed a preliminary injunction in this case.  As a

result, Defendant Durr was added as a defendant for the purposes of injunctive relief. Durr has agreed to keep Plaintiff and Mateen separated for the pendency of this case. No further incidents have occurred to the Court's knowledge.

## ANALYSIS

Plaintiff's claim is governed by the Fourteenth Amendment's due process clause because he is a pretrial detainee. However, for all practical purposes, the legal analysis is the same as the Eight Amendment analysis. Brown v. Budz, 398 F.3d 904, 910 (7th Cir. 2005)(applying Eighth Amendment standard to failure-to-protect claim by person detained under Sexually Violent Act). Plaintiff's evidence must allow a reasonable juror to find that Defendants were deliberately indifferent to a substantial risk of serious harm to Plaintiff from his declared enemies. Id.

Defendants do not dispute that a substantial risk of serious harm existed. Such a risk is reasonably inferred from the threats Plaintiff received and from his efforts to escape these five inmates. The question is whether Defendants were deliberately indifferent to that risk.

No evidence of deliberate indifference exists against Defendants Johnston or Bouvet. According to Plaintiff, Defendant Johnston's only involvement was to pick up Plaintiff's enemy list from Plaintiff's cell. Johnston does not remember picking up any list from Plaintiff, but even if he had, he would have forwarded the

list to his supervisor. There is no evidence that Johnston failed to forward the request, even negligently. Bouvet is included as a defendant only because he is one of Johnston's supervisors, but there is no respondeat superior liability under 42 U.S.C. § 1983. *See* Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001)(no respondeat superior liability under § 1983). Summary judgment will therefore be granted to Johnston and Bouvet.

However, Defendants Cain, Kirby, and Fox have not yet met their burden on summary judgment. A reasonable juror could infer that they were aware that these inmates posed a risk to Plaintiff. Plaintiff personally told Defendants Cain and Kirby of the risk, and Fox's knowledge might be inferred from his purported duties to classify inmates. Deliberate indifference is a state of mind, yet there are no affidavits from any of these defendants. Absent are any averments from them addressing what information they received from Plaintiff about his enemies, what they did with that information, or their involvement, if any, in coordinating the medical call on the day of the assault. They do not address whether Plaintiff's enemies were documented before the attack, nor do they offer any of the relevant paperwork, such as the incident report purportedly completed by Officer Ball when Plaintiff was moved to segregation. Defendants also do not address whether Plaintiff's enemy list and request to avoid medical call were ever received.

As to Defendant Durr, he is named as a defendant solely for purposes of injunctive relief. However, Durr does not address Plaintiff's claim for injunctive relief. Are Plaintiff's enemies still at the Jail? If so, what steps are being taken to ensure that those enemies are not left unsupervised with Plaintiff?

In sum, too many holes exist in the record to grant summary judgment for Defendants Cain, Kirby, Fox, and Durr. These Defendants will be given an opportunity to file a supplemental motion for summary judgment. In the meantime, the case will be set for trial.

IT IS THEREFORE ORDERED:

1) Defendants' motion for summary judgment is granted in part and denied in part (d/e 59).

2) Summary judgment is granted to Defendants Johnston and Bouvet. At the close of this case, the clerk is directed to enter judgment in favor of Johnston and Bouvet and against Plaintiff.

3) Summary judgment is denied to Defendants Cain, Kirby, Fox, and Durr.

4) Defendants Cain, Kirby, Fox, and Durr may file a supplemental summary judgment motion by January 3, 2012.

5) A final pretrial conference is scheduled for Monday, July 9, 2012, at 1:30 p.m., by telephone conference. The parties are directed to submit an agreed,

proposed final pretrial order at least fourteen days before the final pretrial conference. Defendants bear the responsibility of preparing the proposed final pretrial order and mailing the proposed order to Plaintiff to allow Plaintiff sufficient time to review the order before the final pretrial conference. *See* CD-IL Local Rule 16.3.[3]

6) The clerk is directed to issue a telephone writ to secure Plaintiff's appearance at the final pretrial conference.

7) The proposed final pretrial order must include the names of all witnesses to be called at the trial and must indicate whether the witness will appear in person or by video conference. The proposed pretrial order must also include the names and addresses of any witnesses for whom trial subpoenas are sought. The parties are responsible for timely obtaining and serving any necessary subpoenas, as well as providing the necessary witness and mileage fees. Fed. R. Civ. P. 45.

8) Jury selection and the jury trial are scheduled for Tuesday, July 31, 2012, at 9:00 a.m., by personal appearance of the parties before this Court in Springfield, Illinois.

9) After the final pretrial order is entered, the Clerk is directed to issue the

---

[3]The Local Rules are listed on this District's website: www.ilcd.uscourts.gov. A sample pretrial order is attached to those rules.

appropriate process to secure the personal appearance of Plaintiff at the trial and the video appearances of the video witnesses at the trial.

ENTERED: November 10, 2011

FOR THE COURT:

                                                **s/Sue E. Myerscough**
                                                SUE E. MYERSCOUGH
                                      UNITED STATES DISTRICT JUDGE